IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED,

                Plaintiff,

    v.

PAUL M. MIOLENE

                Defendant.

CIVIL ACTION

No.

October 12, 2006

## COMPLAINT

Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Defendant Paul M. Miolene ("Miolene") ("Defendant") based on (i) breach of contract; (ii) conversion of trade secrets and confidential business information; (iii) breach of fiduciary duties; and (iv) unfair competition, and in support thereof avers as follows:

## I. PARTIES

1.     Merrill Lynch is a Delaware corporation maintaining its principal place of business at 222 Broadway, New York, New York and transacting business in this judicial district at 1499 Post Road, Fairfield, Connecticut. Merrill Lynch is a citizen of the States of Delaware and New York.

2.     Defendant is a former financial advisor and employee in Merrill Lynch's Fairfield, Connecticut office. Defendant is a citizen of the State of Connecticut who, upon information and belief, resides at 10 Twelve O'Clock Circle, Trumbull, Connecticut.

## II. VENUE

3.     Venue is proper in this judicial district as it is the district in which the conduct complained of arose.

## III.  **THE FACTS**

4.      Merrill Lynch is engaged in the business of, <u>inter alia</u>, providing financial services.

5.      Defendant commenced his employment with Merrill Lynch in or about August 1990.

6.      As a condition of his employment with Merrill Lynch, Defendant executed an employment agreement known as a <u>Financial Consultant Trainee Agreement</u> (a copy of which is attached hereto, made part hereof, and marked as Exhibit "A").

7.      In pertinent part, the terms, conditions and provisions of the Defendant's employment contract provided that Merrill Lynch:

(a)      train and employ Defendant in a sales capacity for a sales position;

(b)      pay Defendant while he was trained and employed in said sales capacity;

(c)      provide  Defendant  with  opportunities,  support services, and facilities; and

(d)      provide other good and valuable consideration.

8.      Merrill Lynch provided the above considerations to Defendant and has satisfied all conditions precedent.

9.      More specifically, Merrill Lynch compensated Defendant at all times during his employment with Merrill Lynch, provided Defendant with intensive introductory training as a financial advisor, and provided Defendant with continuing on-the-job training. Merrill Lynch also provided him with extensive support services, provided him with abundant sales opportunities, registered him with the New York Stock Exchange, National Association of Securities Dealers, the American Stock Exchange, and the Connecticut state securities

2

commission, and provided him with many Merrill Lynch benefits, systems, resources and support at all times.

10.     In addition to the foregoing, Merrill Lynch provided Defendant with office facilities, secretarial services, clearing services, operational systems, product inventory, research, the benefit of Merrill Lynch advertising, goodwill and name recognition, access to and use of experts in asset management, tax, estate planning and insurance, and with promotional marketing and sales support.

11.     By virtue of Defendant's employment at Merrill Lynch, Defendant gained access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worth, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

12.     Defendant had access to, and acquired information and records that revealed the names, addresses and confidential information of numerous Merrill Lynch accounts, representing millions of dollars in assets under Merrill Lynch management.

13.     In consideration of the foregoing benefits and opportunities provided by Merrill Lynch to Defendant, Defendant agreed in his <u>Financial Consultant Trainee Agreement</u>, <u>inter alia</u>, that:

> 2. **The parties recognize and acknowledge that Merrill Lynch can only do business through its employees and that clients, including those whom Miolene prospects, finds and develops, are customers of Merrill Lynch and are not, and do not become, customers of Miolene.**
>
> 3. **The parties agree that all records** (whether originals, copies or computerized) **containing customer information, including but not limited to names and addresses, are the proprietary information of Merrill Lynch and will not be removed from the office of Merrill Lynch in any form,** i.e. not originals, nor copies nor computerized software.

4.  The parties further agree that Miolene **will not disclose to any person, firm, association, partnership, corporation or other entity, the contents, in whole or in part, of such records and documents,** except in the ordinary course of conducting business for Merrill Lynch.

5.  Miolene recognizes and acknowledges that Merrill Lynch has a substantial interest in retaining its customers, therefore, Miolene **AGREES THAT IN THE EVENT OF MIOLENE'S TERMINATION OF EMPLOYMENT HE/SHE WILL NOT COMPETE WITH MERRILL LYNCH FOR A PERIOD OF 90 DAYS FROM THE DAY OF TERMINATION WITHIN 100 MILES OF THE OFFICE OF MERRILL LYNCH WHERE MIOLENE WAS EMPLOYED.**

Exhibit "A" at ¶¶ 1-5 (emphasis added).

14.     Defendant's <u>Financial Consultant Trainee Agreement</u> also contains his

<u>express consent</u> to the issuance of a temporary restraining order and a preliminary injunction

by this Court to prohibit the breach of any terms of his contract and to preserve the <u>status quo</u>

pending arbitration:

6.  In the event that Miolene violates, or is reasonably believed by Merrill Lynch to be about to violate, any of the provisions of this Agreement Miolene CONSENTS TO THE ISSUANCE BY A COURT OF COMPETENT JURISDICTION, WHICH HAS JURISDICTION FOR THE GEOGRAPHIC LOCATION OF THE BRANCH OFFICE WHERE MIOLENE WAS EMPLOYED, TO A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION TO PROHIBIT THE BREACH OF ANY PROVISION OF THIS CONTRACT.

Exhibit "A" at ¶6 (emphasis added).

15.     As a condition of his employment with Merrill Lynch, Defendant agreed, in

writing and on an annual basis, to abide by Merrill Lynch's <u>Compliance Outline for Private Client</u>

<u>Financial Consultants</u>, which provides, in pertinent part, as follows:

**PRIVACY POLICY -- CONFIDENTIALITY OF CLIENT INFORMATION**

Merrill Lynch protects the confidentiality and security of client information.  Employees must understand the need for the careful handling of this information.  Merrill Lynch's privacy policy provides that

4

- We do not sell or rent clients' personal information.
- Employees may not discuss the business affairs of any client with any other employee, except on a strict need-to-know basis.
- We do not release client information, except upon a client's authorization or when required by law.
- Third-party service providers with access to client information are subject to the Merrill Lynch Privacy Policy.

Questions concerning the confidentiality or security of client information should be directed to your manager, Compliance Officer, or the Office of General Counsel.

Exhibit "B" (emphasis added).

16.     Defendant further agreed to abide by Merrill Lynch's <u>Guidelines For Business Conduct</u>, which provides:

Merrill Lynch's assets include more than capital – there are its premises, equipment, **information**, business plans, ideas for new products and services, <u>client lists</u>, and, most importantly, in a very real sense, its people.  It is expected that employees will use these assets only for the purposes intended and not for their personal benefit unless they have been approved for general employee or public use.  This even extends to business opportunities that come to employees as a result of their employment – they are the proprietary opportunities of Merrill Lynch.

Exhibit "C".

17.     In addition, Defendant agreed in his <u>Conflict of Interest</u> agreement as follows:

**I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.**
* * *
I have read and agree to abide by this statement of Merrill Lynch & Co. policy.  <u>I also understand completion of this form is a condition of employment</u>.

Exhibit "D".

18.     Defendant resigned <u>without any prior notice</u> from Merrill Lynch on Friday, September 29, 2006, and immediately joined a competitor securities firm, Morgan Stanley DW, Inc. ("Morgan Stanley"), located nearby.

19.     Merrill Lynch alleges, upon information and belief, that Defendant has wrongfully converted Merrill Lynch customer information and is planning to divert Merrill Lynch customers to his new employer.

20.     Merrill Lynch alleges, upon information and belief, that Defendant prepared to engage in, is engaging in, and plans to continue to engage in, <u>inter alia</u>, the following acts:

> (a)  removal of Merrill Lynch customer information and conversion of the information contained in confidential Merrill Lynch business records;
>
> (b)  soliciting and/or preparing to solicit Merrill Lynch's clients to terminate their relationship with Merrill Lynch and transfer their accounts to his new employer; and/or
>
> (c)  other such acts contrary to the terms, conditions, and provisions of Defendant's employment contracts and Merrill Lynch guidelines and policies.

21.     Defendant's conduct was and is in furtherance of a scheme to obtain and to convert to his personal use and gain the records of Merrill Lynch, the property of Merrill Lynch, the names, addresses and other confidential customer information used to conduct business at Merrill Lynch, and the goodwill generated, directly and indirectly, by his association with Merrill Lynch, and to do so by means of, <u>inter alia</u>, solicitation of clients of Merrill Lynch serviced by Defendant and whose names became known to Defendant while in the employ of Merrill Lynch.

22.     Merrill Lynch believes and, therefore, avers that:

(a)     Defendant has possession or control of Merrill Lynch confidential, Merrill Lynch business information;

(b)     Defendant has used, and will continue to use, confidential customer information to solicit Merrill Lynch accounts to divert the business of Merrill Lynch customers from Merrill Lynch to his new employer;

(c)     Defendant will otherwise continue to engage in acts constituting a breach of the terms of his Merrill Lynch contract and Merrill Lynch policies; a breach of his fiduciary duties; and other tortious conduct, including and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

23.     The averments of Paragraphs 1 through 22 are incorporated by reference herein with the same force and effect as if set forth in full below.

24.     By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant.

25.     Unless Defendant is preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

a)     Disclosure of confidential information that is solely the property of Merrill Lynch and its clients;

b)     Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c)     Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

d)     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

26.     Merrill Lynch has no adequate remedy at law.

7

WHEREFORE, Merrill Lynch respectfully requests that:

1.      A Temporary Restraining Order and/or a Preliminary Injunction issue immediately, enjoining Defendant, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendant's new employer, Morgan Stanley, until hearing and thereafter until further Order of this Court, from:

a)      soliciting any business from, or initiating any further contact or communication with, any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while employed by Merrill Lynch, for the purpose of advising any client of his new affiliation or for the purpose of inviting, encouraging, or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding members of Defendant's family and relatives);

b)   using, disclosing, or transmitting, for any purpose, information contained in the records of Merrill Lynch or concerning its clients, including for purposes of soliciting business or account transfers from any client formerly serviced by Defendant or whose names became known to him while in the employ of Merrill Lynch; and

c)   destroying, erasing or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendant's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch customers, or

which relate to any of the events alleged in the Complaint in this action; and

d) any and all other such acts as this Court deems appropriate for injunctive relief.

### COUNT II

### BREACH OF CONTRACT

27.    The allegations of Paragraphs 1 through 26 are incorporated herein by reference with the same force and effect as if set forth in full below.

28.    Defendant has violated, inter alia, his employment contract with Merrill Lynch, attached hereto as Exhibit **"A,"** as well as the Merrill Lynch policies by which he agreed to abide in writing.

29.    Defendant is continuing to violate his contractual obligations and said Merrill Lynch policies.

30.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer financial loss.

### COUNT III

### TORT-CONVERSION/MISAPPROPRIATION

31.    The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

32.    The foregoing conduct of Defendant constitutes a conversion and misappropriation of Merrill Lynch's proprietary information and trade secrets.

33.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

34.     The allegations of Paragraphs 1 through 33 are incorporated herein by reference with the same force and effect as if set forth in full below.

35.     Defendant has violated the common law fiduciary duties of loyalty and the fiduciary duties arising under his employment contract and relationship with Merrill Lynch in that, while employed by Merrill Lynch, Defendant secretly planned to leave the employ of Merrill Lynch and schemed with others to deprive Merrill Lynch of its clients and confidential business records, and trade secrets.

36.     As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer financial loss.

## COUNT V

## UNFAIR COMPETITION
### (*Conn. Gen. Stat. § 42-110a* et seq.)

37.     The allegations of Paragraphs 1 through 36 are incorporated herein by reference with the same force and effect as if set forth in full below.

38.     The Connecticut Unfair Trade Practices Act (the "CUTPA"), C.G.S.A. § 42-110a, et. seq., provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. § 42-110b(a).  Trade or commerce, in turn, is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article commodity or thing of value in this state."  C.G.S.A. § 42-110a(4).

39.     The foregoing conduct of Defendants constitutes an unfair method of competition.

40.    As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer financial loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, and V Merrill Lynch demands judgment in its favor and against Defendant for temporary injunctive relief pending the outcome of arbitration to be held pursuant to Rule 10335(b) of the National Association of Securities Dealers Code of Arbitration Procedure.

Respectfully submitted,

By: _____
David P. Friedman (ct03558)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT 06601-1740
Tel: (203) 333-9441
Fax: (203) 333-1489
Email: dfriedman@znclaw.com

Attorneys for Merrill Lynch,
Pierce, Fenner & Smith Incorporated

Of Counsel:
Jill B. Clarke, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road, Suite 202
Paoli, Pennsylvania 19301
Tel: (610) 408-2009
Fax: (610) 854-4309

# EXHIBIT

## "A"

### FINANCIAL CONSULTANT TRAINEE AGREEMENT

: rrill Lynch, Pierce, Fenner & Smith Inc. (Hereinafter referred to as Merrill Lynch)  offers to employ ____Paul Miolene_____(hereinafter __Miolene____ ) as a Financial Consultant Trainee which the parties intend will lead to the position of Financial Consultant within two years.

1.   In consideration of Merrill Lynch giving _Miolene_____ this opportunity and in consideration of Merrill Lynch:

a)  providing the training and support needed to become licensed by the necessary regulatory bodies as a registered representative; and

b)  continued support including but not limited to, reassignment of accounts; walk-ins; prospective customer leads, reimbursements of legitimate business expenses for obtaining and doing business; advertising which creates name recognition.

2.   The parties recognize and acknowledge that Merrill Lynch can only do business through its employees and that clients, including those whom _Miolene_____ prospects, finds and develops, are customers of Merrill Lynch and are not, and do not become, customers of Miolene____.

3.   The parties agree that all records (whether originals,copies or computerized) containing customer information; including but not limited to names and addresses, are the proprietary information of Merrill Lynch and will not be  removed from the office of Merrill Lynch in any form, i.e. not originals, nor copies nor computerized software.

4.  The parties further agree that ___Miolene___ · will not disclose to any person, firm, association, partnership, corporation or other entity, the contents, in whole or in part, of such records and documents, except in the ordinary course of conducting business for Merrill Lynch.

5.  ___Miolene___ recognizes and acknowledges that Merrill Lynch has a substantial interest in retaining its customers, therefore, ___Miolene___ AGREES THAT IN THE EVENT OF ___Miolene's___ TERMINATION OF EMPLOYMENT HE/SHE WILL NOT COMPETE WITH MERRILL LYNCH FOR A PERIOD OF 90 DAYS FROM THE DAY OF TERMINATION WITHIN ___100___ MILES OF THE OFFICE OF MERRILL LYNCH WHERE ___Miolene___ WAS EMPLOYED.

6.  In the event that· ___Miolene___ violates, or is reasonably believed by Merrill Lynch to be about to violate, any of the provisions of this agreement ___Miolene___ CONSENTS TO THE ISSUANCE BY A COURT OF COMPETENT JURISDICTION, WHICH HAS JURISDICTION FOR THE GEOGRAPHIC LOCATION OF THE BRANCH OFFICE WHERE ___Miolene___ WAS EMPLOYED, TO A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION TO PROHIBIT THE BREACH OF ANY PROVISION OF THIS CONTRACT.

7.  In addition to the terms and conditions recited above, in the event that ___Miolene___ resigns his/her employment or provokes termination of his/her employment or is terminated for cause prior to completion of two years employment from the date he/she is assigned a Merrill Lynch Financial Consultant production number ___Miolene___ agrees to pay Merrill Lynch in consideration of the monies invested in, and training made available to him/her damages in the amount of Thirty Eight Thousand Dollars ($38,000). This amount is to be reduced by Nine Thousand Five Hundred Dollars ($9,500.00) for each completed six month period of employment from the date he/she is assigned a Merrill Lynch Financial

.nsultant production number.  __Miolene__   understands that he/she will have

·  obligations under the terms of THIS PARAGRAPH TWO years after the date

__Miolene__   is assigned a Merrill Lynch Financial Consultant production number.

ι   __Miolene__   has been made aware  that should he/she become registered

at th. .YSE and/or other self regulatory organizations he/she and Merrill Lynch

may be .required to arbitrate any dispute arising out of his/her employment or

termination of his/her employment with Merrill Lynch at the instance of either

party.  __Miolene__   AGREES THAT DESPITE THIS OBLIGATION AND/OR RIGHT HE/SHE

HEREBY WAIVES HIS/HER RIGHT TO ARBITRATION OF ANY AND ALL DISPUTES ARISING OUT

OF PARAGRAPHS 4, 5 AND 6 OF THIS AGREEMENT.

9.  This Agreement shall be construed, and the validity, performance and

enforcement thereof shall be governed by the laws of the State of

__Connecticut__      .

10.  If any provision of this Agreement shall, for any reason, be adjudged by

any court of competent jurisdiction to be invalid or unenforceable, such judgment

shall not affect, impair or invalidate the remainder of this  Agreement but shall

be confined in its operation to the provision of this Agreement directly involved

in the controversy in which such judgment shall have been rendered.

11.  In the event of a breach of one or more of the terms of this Agreement

__Miolene__   agrees to pay all costs and fees, including attorneys' fees, in

connection with the enforcement of the term or terms of this Agreement.

12. I, __Miolene__   , HAVE READ THIS AGREEMENT AND RECOGNIZE THAT I MAY

BE WAIVING SUBSTANTIAL RIGHTS AND TEMPORARILY LIMITING MY RIGHT TO WORK FOR A

COMPETITOR OF MERRILL LYNCH IF AND WHEN MY EMPLOYMENT WITH MERRILL LYNCH IS ENDED.

I HAVE HAD AN OPPORTUNITY TO ASK MERRILL LYNCH REPRESENTATIVES QUESTIONS ABOUT

IT.  I HAVE HAD AN OPPORTUNITY AND HAVE BEEN ENCOURAGED BY MERRILL LYNCH TO

CONSULT WITH AN ATTORNEY OF MY CHOICE (AT MY OWN EXPENSE) PRIOR TO SIGNING THIS

CONTRACT, A I UNDERSTAND THAT MY SIGNING THIS AGREEMENT IS A CONDITION OF EMPLOYMENT, WHICH I UNDERSTOOD BEFORE I ACCEPTED EMPLOYMENT.

Date: _____8/1/90_____            _____
                                      Employee's Signature

Date: _____8/6/90_____            _____
                                      For Merrill Lynch, Pierce, Fenner
                                      & Smith Incorporated

# EXHIBIT

# "B"

TOTAL P.02

 **Merrill Lynch**

Pursuant to Merrill Lynch Policy and NASD Article III, Section 27:

I am in receipt of the online instructions to access and review "Merrill Lynch Guidelines for Business Conduct" which includes a section on ML Written and Electronic Communications and my signature below will serve as my acknowledgement that I both read and understood it.

I am in receipt of the on-line instructions to access and review the "Compliance Outline for Private Client Financial Advisors" and my signature below will serve as acknowledgement that I have both read and understood it.

⇒ Go to Advisory Division Tab on Wealth Management Workstation
⇒ Click the Compliance Tab
⇒ Click the OGC tab
⇒ Click Policies & Procedures
⇒ Scroll to the fourth batch of items titled **"Policies/Compliance – GPC"**
⇒ The Compliance Outline for Private Client is the first item on the right side

I am in receipt of the on-line instructions to access and review the Insurance "MLIG Compliance Policies and Procedures Manual" and my signature below will serve as my acknowledgement that I have both read and understood it.

I acknowledge that I have completed and submitted (or will submit during this calendar year) the annual "EARS" survey, located on the home page of the Office of General Counsel web site accessed through Advisory On-Line, submitted any required Outside Interest Questionnaire deemed necessary, and my signature below will serve as such acknowledgement.

Print Name  *PAUL MIOVENE*

Signature

Date  *4/13/06*        Office  *874*

# EXHIBIT

## "C"



**Merrill Lynch**

**Guidelines for Business Conduct**

Integrity, honesty and dedication to the highest ethical standards are but a few of the attributes that set Merrill Lynch apart from many other organizations.

The attached brochure explains in some detail the basic tenets of Merrill Lynch's commitment to the highest standards of business conduct. The brochure is important. Everyone, through the ranks to the Chairman, knows the commitment, believes in it and works actively to keep it.

That is why we provide each new employee with the brochure and why we ask you to read it, ensure that you understand it, and accept the obligation to follow the *Guidelines for Business Conduct*.

_____
Signature

_____
8/1/90
Date

... understand its contents and intention, and agree to adhere to it. I understand also that unauthorized use of, or contribution to unauthorized use of computer facilities and/or corporate information or data constitutes a major infraction of policy. I am aware that I am responsible for maintaining the security of corporate information or Data that I have access to while employed by the Firm. Failure to comply with these responsibilities may result in immediate discharge without prior warning.

_____
Signature

_____
8/1/90
Date

# EXHIBIT

# "D"

**Merrill Lynch**                                          **Conflict of Interest**

To: Human Resources Department

1. This is to acknowledge my awareness of the Merrill Lynch policy which states that I must not maintain a security and/or commodity investment account in any category with any other firm, and that I will immediately terminate any such accounts. This applies to accounts in which I have a direct or indirect interest or over which I exercise control.

   I also understand that I must have prior written approval to participate in:

   ■ outside employment which presents a conflict of interest with my position at Merrill Lynch.

   ■ directorships in private corporations (public corporate directorships are strictly prohibited).

   ■ private investments in securities which can not be purchased through stock exchange(s) member firms or a bank.

   ■ outside speaking and writing activities related to the securities and/or commodities business.

2. I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.

   I agree to disclose to Merrill Lynch promptly any and all inventions and copyrightable material that are made by me during my employment and agree that they shall be the exclusive property of Merrill Lynch. I will, during and after my employment with Merrill Lynch, without charge by me, but at Merrill Lynch's sole expense, sign and deliver all writings and perform all acts required in order to vest in Merrill Lynch all rights in all such inventions and copyrightable material and in order for Merrill Lynch to make and prosecute patent applications and to secure its copyright rights.

3. I have read and agree to abide by this statement of Merrill Lynch & Co. policy. I also understand completion of this form is a condition of employment.

   Signed _____

   Date   8/1/96

Please Type or Print

| Employee No. | Employee Name | Dept./Office |
|---|---|---|
|  | PAUL M. MIOLENE | FAIRFIELD |